UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X

MARCELINO GARCIA and FELIPE LEAL, individually and on
behalf of all others similarly situated,                                         CIVIL ACTION NO.

         Plaintiffs,

                 COMPLAINT

   -against-

LEE & GIANT FOOD SYSTEM INC. D/B/A GIANT FOOD, INC.
and IN TAE JANG,

         Defendants.
-------------------------------------------------------------------------------X

  Plaintiffs Marcelino Garcia ("Garcia") and Felipe Leal ("Leal") (collectively, "Plaintiffs"),

individually and on behalf of all others similarly situated, by their attorneys, Katz Melinger PLLC,

complaining of the defendants, Lee & Giant Food System Inc. d/b/a Giant Food, Inc. ("Lee &

Giant") and In Tae Jang ("Jang") (collectively, "Defendants"), respectfully allege as follows:

## I. Nature of Action, Jurisdiction, and Venue

  1.  This is an action seeking equitable and legal relief for Defendants' violations of the

Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA") and New York

Labor Law ("NYLL") §§ 190 *et seq.* and 650 *et seq.*

  2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, in that this is an action

arising under the FLSA.

  3.  This Court has supplemental jurisdiction over the claims arising under New York

state law pursuant to 28 U.S.C. § 1367, in that the New York state law claims are so closely related

to Plaintiffs' federal claims as to form the same case or controversy under Article III of the United

States Constitution.

  4.  Venue is proper in this judicial district under 28 U.S.C. § 1391, as a substantial part

of the events and omissions giving rise to the claims occurred in this judicial district, and

Defendants conduct business through their employees, including Plaintiff, within this judicial district.

## II. Parties

5.      Plaintiff Garcia is an individual residing in the State of New York.

6.      Plaintiff Leal is an individual residing in the State of New York.

7.      At all relevant times, Plaintiffs were employed by Defendants.

8.      While employed with Defendants, Plaintiffs were regularly engaged in interstate commerce and/or in the production of goods for commerce.

9.      Plaintiffs are covered employees within the meaning of the FLSA and the NYLL.

10.     Defendant Lee & Giant is a domestic corporation with its principal place of business located at 355 Exterior Street, Bronx, New York 10451.

11.     Defendant Jang is an individual residing, upon information and belief, in the State of New York.

12.     At all relevant times, Jang was an owner, officer, and/or person in control of Lee & Giant.

13.     At all relevant times, Jang was and still is an officer, director, shareholder, and/or person in control of Lee & Giant, who exercised significant control over the company's operations; had the authority to hire, fire, and discipline employees; set employees' work schedules and conditions of employment; determine the rate and method of payment for employees; and maintain employment records.

14.     Upon information and belief, Jang exercised sufficient control over Plaintiffs' day-to-day operations to be considered their employers for the purposes of the FLSA and NYLL.

2

15.     Defendants are covered employers within the meaning of the FLSA and the NYLL and, at all relevant times, employed Plaintiffs.

16.     Upon information and belief, at all relevant times, Defendants' gross revenues were in excess of $500,000.00 per year.

17.     Defendants operate in interstate commerce.

18.     Defendants are subject to suit under the statutes alleged above.

### III. FLSA Collective Action Allegations

19.     The First and Third Causes of Action in this Complaint, which arise out of the FLSA, are brought by Plaintiffs on behalf of themselves and similarly situated persons who were employed since the date three (3) years prior to the filing of this Complaint, and who elect to opt-in to this action (the "FLSA Collective Plaintiffs").

20.     The FLSA Collective Plaintiffs consist of no less than six (6) to ten (10) similarly situated current and former warehouse helpers of Defendants who have been victims of Defendants' common policies and practices that have violated their rights under the FLSA by, *inter alia*, failing to compensate them for all hours worked and willfully denying them minimum wages and overtime compensation.

21.     As part of their regular business practices, Defendants have intentionally, willfully, and repeatedly harmed Plaintiffs and the FLSA Collective Plaintiffs by engaging in a pattern, practice, and/or policy of violating the FLSA. This policy and pattern or practice includes, *inter alia*, failing to compensate warehouse helpers for all hours worked, including their regular hourly rate or the applicable minimum wage rate, whichever is greater, for all hours below forty (40) hours per week and overtime compensation for all hours worked in excess of forty (40) hours per week.

22.     Defendants have engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation.

23.     Defendants' unlawful conduct has been intentional, willful, in bad faith, and has caused significant damages to Plaintiffs and the FLSA Collective Plaintiffs.

24.     The FLSA Collective Plaintiffs would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit. Those similarly situated employees are known to Defendants, are readily identifiable, and are locatable through Defendants' records. These similarly situated employees should be notified of and allowed to opt-in to this action, pursuant to 29 U.S.C. § 216(b).

### IV. Factual Allegations

#### Plaintiff Garcia

25.     Defendants employed Garcia as a warehouse helper from on or around April 25, 2016 until on or around September 7, 2018.

26.     As a warehouse helper, Garcia performed his job duties both at Defendants' warehouse and outside of Defendants' warehouse.

27.     When Garcia worked at Defendants' warehouse, his job duties included, *inter alia*, packing spices and vegetables, including garlic, pepper, paprika, and oregano; retrieving food products from the warehouse and assembling orders for inspection by supervisors; organizing food products in the warehouse freezer; loading and unloading food products from delivery trucks; and sweeping, vacuuming, and taking out the garbage from Defendants' offices.

28.     When Garcia worked outside of Defendants' warehouse, Garcia was required to assist in delivering food products to Defendants' clients, including loading and unloading food products from delivery trucks.

29.     Throughout Garcia's employment with Defendants, Garcia primarily performed his work duties outside of Defendants' warehouse.

30.     From on or around April 25, 2016 until in or around March 2017, Garcia regularly worked Mondays through Fridays from between 5:00 a.m. or 6:00 a.m. until between 4:00 p.m. or 5:00 p.m., for an average of approximately fifty-five (55) hours per week.

31.     From in or around April 2017 until on or around September 7, 2018, Garcia regularly worked Mondays through Fridays from between 6:00 a.m. and 7:00 a.m. until between 4:00 p.m. to 5:00 p.m., for an average of approximately fifty (50) hours per week.

32.     Throughout Garcia's employment, Defendants tracked Garcia's work hours.

33.     Throughout Garcia's employment with Defendants, Garcia was not afforded meal or rest breaks during his shifts.

34.     Even though Garcia was not afforded meal or rest breaks during his shifts, Defendants routinely deducted one (1) hour from Garcia's work hours as an unpaid break for each day Garcia worked, which amounted to approximately five (5) hours of work deducted as unpaid breaks per week.

35.     Furthermore, on various occasions, for reasons unknown to Garcia, Defendants deducted time from Garcia's work hours in addition to the five (5) hours deducted as unpaid breaks per week.

36.     By way of example, during the week of April 25, 2016, Garcia worked approximately fifty-three and seven-tenths (53.70) hours, without any meal or rest breaks, but Defendants compensated Garcia for only forty-five and one-half (45.50) hours and failed to pay Garcia any compensation for the remaining eight and two-tenths (8.20) hours of work.

37.     Similarly, during the week of May 2, 2016, Garcia worked approximately fifty-two and fifty-two hundredths (52.52) hours, without taking any meal or rest breaks, but Defendants compensated Garcia for only forty-five (45) hours and failed to pay Garcia any compensation for the remaining seven and fifty-two hundredths (7.52) hours of work.

38.     From on or around April 25, 2016 until in or around December 2016, Defendants compensated Garcia at a regular rate of $9.00 per hour and at a rate of $13.50 per hour for hours worked in excess of forty (40) per week.

39.     From in or around January 2017 until in or around December 2017, Defendants compensated Garcia at a regular rate of $11.00 per hour and at a rate of $16.50 per hour for hours worked in excess of forty (40) per week.

40.     From in or around January 2018 until on or around September 7, 2018, Defendants compensated Garcia at a regular rate of $13.00 per hour and at a rate of $19.50 per hour for hours worked in excess of forty (40) per week.

41.     Although Garcia's minimum and overtime rates of pay were in compliance with state and federal law, Defendants routinely deducted time from Garcia's work hours and failed to provide Garcia with any compensation for said time.

42.     While employed with Defendants, Garcia was a non-exempt employee pursuant to the FLSA and the NYLL, and was entitled to receive compensation for all hours worked, including his regular hourly rate or the applicable minimum wage rate, whichever is greater, for all hours below forty (40) hours per week; spread of hours wages  for every day in which Garcia's shifts exceeded ten (10) hours;  and overtime compensation for all hours worked in excess of forty (40) hours per week.

43.     Despite regularly working more than forty (40) hours per week, Garcia did not receive the proper minimum and overtime wages owed to him for all hours worked.

44.     Furthermore, although Garcia regularly worked shifts that spanned more than ten (10) hours per day, Defendants failed to compensate Garcia with an additional hour's pay at the minimum wage rate for every day in which Garcia's shifts exceed ten (10) hours.

45.     Defendants also failed to furnish Garcia with a payroll notice at the time of his hire containing allowances, if any claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; the "doing business as" names used by the employer; the physical address of the employer's main or principal place of business, and a mailing address if different; the telephone number of the employer or any other information required by NYLL § 195 (1).

46.     Defendants further failed to furnish Garcia with each wage payment, an accurate statement listing Garcia's regular and overtime rates of pay and the accurate number of regular and overtime hours worked, or any other information required by NYLL § 195(3).

47.     Defendants violated federal and state law by willfully failing to pay Garcia the applicable minimum wages, overtime compensation, and spread of hours wages to which Garcia was entitled, and by failing to provide Garcia with the required wage statements and payroll notices required by the NYLL.

48.     Furthermore, Defendants paid Garcia exclusively in cash from the beginning of his employment until December 2016, and paid him partially by check and partially in cash for the remainder of his employment.

49.     Defendants issued United States Internal Revenue Service ("IRS") Forms W-2 to Garcia for the tax years 2017 and 2018 that only reflected the wages Defendants paid to Garcia via check during each such year.

50.     As a result, the Form W-2s that Defendants issued to Garcia for the tax years 2017 and 2018 did not contain all of the wages that Defendants paid to Garcia in 2017 and 2018.

51.     Upon information and belief, Defendants filed the Forms W-2 issued to Garcia for the tax years 2017 and 2018 with the IRS.

52.     Defendants willfully filed false information returns with the IRS as to Garcia's wages, in violation of 26 U.S.C. § 7434.

### Plaintiff Leal

53.     Leal has been employed by Defendants as a warehouse helper since in or around 2011.

54.     As a warehouse helper, Leal performs his job duties both at Defendants' warehouse and outside of Defendants' warehouse.

55.     When Leal worked at Defendants' warehouse, his job duties included, *inter alia*, bringing food products to the warehouse basement; packing spices and vegetables, including garlic, pepper, paprika, and oregano; retrieving food products from the warehouse and assembling orders for inspection by supervisors; organizing food products in the warehouse freezer; applying labels to food products; loading and unloading food products from delivery trucks; sweeping, vacuuming, and taking out the garbage from Defendants' offices; cleaning the warehouse bathrooms; and sweeping the warehouse's surrounding area and parking lot.

56.     When Leal worked outside of Defendants' warehouse, Leal was required to assist in delivering food products to Defendants' clients, including loading and unloading food products from delivery trucks.

57.     From the beginning of Leal's employment with Defendants until in or around March 2017, Leal primarily performed his work duties outside of Defendants' warehouse; however, since April 2017 Leal has primarily performed his work duties at Defendants' warehouse.

58.     From in or around 2011 until in or around December 2013, Leal regularly worked Mondays through Fridays from between 3:00 a.m. and 4:00 a.m. until between 4:00 p.m. and 6:00 p.m., for an average of approximately sixty-seven and one-half (67.5) hours per week.

59.     From in or around January 2014 until in or around December 2014, Leal regularly worked Mondays through Fridays from between 4:00 a.m. and 6:00 a.m. until between 2:00 p.m. and 4:00 p.m., for an average of approximately fifty (50) hours per week.

60.     From in or around January 2015 until in or around March 2017, Leal regularly worked Mondays through Fridays from between 4:00 a.m. and 5:00 a.m. until between 2:00 p.m. and 4:00 p.m., for an average of approximately fifty-two and one-half (52.5) hours per week.

61.     Since in or around April 2017, Leal has regularly worked and continues to work Mondays through Fridays from between 6:00 a.m. and 7:00 a.m. until between 4:00 p.m. and 5:00 p.m., and typically takes a daily one (1) hour break, for an average of approximately forty-five (45) hours per week.

62.     Throughout Leal's employment, Defendants tracked Leal's work hours.

63.     From the beginning of Leal's employment until in or around March 2017, Leal was not afforded a meal or rest break during his shifts.

64.     Even though Leal was not afforded a meal or rest break during his shifts, Defendants routinely deducted one (1) hour from Leal's work hours as an unpaid break for each day Leal worked, which amounted to approximately five (5) hours of work deducted as unpaid breaks per week.

65.     Furthermore, even though Leal has typically taken a daily one (1) hour break since April 2017, on days when Leal did not take a one (1) hour break, Defendants nonetheless deducted one (1) hour from Leal's work hours for each such day.

66.     From in or around 2011 until in or around December 2014, Defendants compensated Leal at fixed salary of approximately $370.00 per week and did not pay Leal overtime wages for any hours worked in excess of forty (40) hours per week.

67.     From in or around January 2015 until in or around September 2015, Defendants compensated Leal at a regular rate of $8.75 per hour for the first forty (40) hours worked and at a rate of $13.13 per hour for the first five (5) hours of overtime that Leal worked each week.

68.     However, Defendants failed to compensate Leal for any overtime hours worked beyond five (5) hours of overtime each week.

69.     From in or around October 2015 until in or around December 2015, Defendants compensated Leal at a regular rate of $8.75 per hour and at a rate of $13.13 per hour for hours worked in excess of forty (40) per week.

70.     From in or around January 2016 until in or around December 2016, Defendants compensated Leal at a regular rate of $9.00 per hour and at a rate of $13.50 per hour for hours worked in excess of forty (40) per week.

71.     From in or around January 2017 until in or around December 2017, Defendants compensated Leal at a regular rate of $11.00 per hour and at a rate of $16.50 per hour for hours worked in excess of forty (40) per week.

72.     From in or around January 2018 until in or around December 2018, Defendants compensated Leal at a regular rate of $13.00 per hour and at a rate of $19.50 per hour for hours worked in excess of forty (40) per week.

73.     Since January 2019 Defendants compensated and continue to compensate Leal at a regular rate of $15.00 per hour and at a rate of $22.50 per hour for hours worked in excess of forty (40) per week.

74.     Although Leal's minimum and overtime rates of pay were in compliance with state and federal law since in or around October 2015, Defendants routinely deducted time from Leal's work hours and failed to provide Leal with any compensation for said time.

75.     While employed with Defendants, Leal was and is a non-exempt employee pursuant to the FLSA and the NYLL, and was and is entitled to receive compensation for all hours worked, including his regular hourly rate or the applicable minimum wage rate, whichever is greater, for all hours below forty (40) hours per week; spread of hours wages for every day in which Leal's shifts exceeded ten (10) hours; and overtime compensation for all hours worked in excess of forty (40) hours per week.

76.     Despite regularly working more than forty (40) hours per week, Leal did not receive the proper minimum and overtime wages owed to him for all hours worked.

77.     Furthermore, Leal routinely worked shifts that spanned more than ten (10) hours per day; however, Defendants failed to compensate Leal with spread of hours pay equal to one (1)

additional hour's pay at the applicable minimum wage rate for every day in which his shift exceeded ten (10) hours.

78.     Defendants also failed to furnish Leal with a payroll notice at the time of his hire containing allowances, if any claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer; the "doing business as" names used by the employer; the physical address of the employer's main or principal place of business, and a mailing address if different; the telephone number of the employer or any other information required by NYLL § 195 (1).

79.     Defendants further failed to furnish Leal with each wage payment, an accurate statement listing Leal's regular and overtime rates of pay and the accurate number of regular and overtime hours worked, or any other information required by NYLL § 195(3).

80.     Defendants violated federal and state law by willfully failing to pay Leal the applicable minimum wages, spread of hours wages, and overtime compensation to which Leal was entitled, and by failing to provide Leal with the required wage statements and payroll notices required by the NYLL.

**AS AND FOR A FIRST CAUSE OF ACTION ON BEHALF OF PLAINTIFFS,
INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS**
(*Overtime Violations Under the FLSA*)

81.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

82.     Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

83.     Plaintiffs and the FLSA Collective Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

84.     Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for each hour worked in excess of forty (40) hours per week.

85.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required overtime wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

86.     As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to liquidated damages.

87.     Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the First Cause of Action in the amount of their respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A SECOND CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Overtime Violations Under the NYLL)*

88.     Plaintiffs repeat and reallege all prior allegations set forth above.

89.     Pursuant to the applicable provisions of the NYLL, Plaintiffs were entitled to overtime compensation of one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for all hours worked in excess of forty (40) hours per week.

90.    Plaintiffs regularly worked in excess of forty (40) hours per week during their employment with Defendants.

91.    Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs overtime wages of one and one-half (1.5) times their regular hourly rates of pay or the minimum wage, whichever is greater, for each hour worked in excess of forty (40) hours per week.

92.    As a result of Defendants' violations of the law and failure to pay Plaintiffs the required overtime wages, Plaintiffs have been damaged and are entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

93.    As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

94.    Judgment should be entered in favor of Plaintiffs and against Defendants on the Second Cause of Action in the amount of Plaintiffs' respective unpaid overtime wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF PLAINTIFFS, INDIVIDUALLY, AND THE FLSA COLLECTIVE PLAINTIFFS
(*Minimum Wage Violations Under the FLSA*)

95.    Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat and reallege all prior allegations set forth above.

96.    Pursuant to the applicable provisions of the FLSA, Plaintiffs and the FLSA Collective Plaintiffs were entitled to the statutory minimum hourly wages for the hours they worked.

97.    Throughout the relevant time period, Defendants knowingly failed to pay Plaintiffs and the FLSA Collective Plaintiffs the statutory minimum wages for the hours they worked.

98.     As a result of Defendants' violations of the law and failure to pay Plaintiffs and the FLSA Collective Plaintiffs the required minimum wages, Plaintiffs and the FLSA Collective Plaintiffs have been damaged and are entitled to recover from Defendants all minimum wages due, along with all reasonable attorneys' fees, interest, and costs.

99.     As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs and the FLSA Collective Plaintiffs are entitled to liquidated damages.

100.    Judgment should be entered in favor of Plaintiffs and the FLSA Collective Plaintiffs and against Defendants on the Third Cause of Action in the amount of their respective unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A FOURTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
*(Minimum Wages Violations Under the NYLL)*

101.    Plaintiffs repeat and reallege all prior allegations set forth above.

102.    Pursuant to the applicable provisions of the NYLL, Plaintiffs were entitled to receive at least the statutory minimum wages for all hours worked.

103.    Throughout the relevant period, Defendants knowingly failed to pay Plaintiffs at least the statutory minimum wages for the hours they worked.

104.    As a result of Defendants' violations of the law and failure to pay Plaintiffs the required minimum wages, Plaintiffs have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

105.    As Defendants did not have a good faith basis to believe that their failure to pay minimum wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

106.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Fourth Cause of Action in the amount of Plaintiffs' respective unpaid minimum wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A FIFTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
(*Spread of Hours Violations Under the NYLL*)

107.     Plaintiffs repeat and reallege all prior allegations.

108.     Plaintiffs regularly worked shifts that spanned more than ten (10) hours per day.

109.     Defendants willfully failed to pay Plaintiffs additional compensation of one (1) hour's pay at the basic minimum hourly wage rate for each day during which they worked more than ten (10) hours.

110.     By failing to pay Plaintiffs spread of hours pay, Defendants have willfully violated NYLL Article 19, §§ 650, *et seq.*, and the supporting New York State Department of Labor Regulations.

111.     Judgment should be entered in favor of Plaintiffs and against Defendants on the Fifth Cause of Action in the amount of Plaintiffs' respective unpaid spread of hours wages, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

**AS AND FOR A SIXTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS**
(*Failure to Provide Payroll Notices Under the NYLL*)

112.     Plaintiffs repeat and reallege all prior allegations.

113.     Defendants failed to furnish to Plaintiffs, at the time of hire or at any time thereafter, notices containing the rate or rates of pay and basis thereof; allowances, if any claimed as part of the minimum wage; the regular pay day designated by the employer; the name of the employer;

the "doing business as" names used by the employer; the physical address of the employer's main or principal place of business, and a mailing address if different; the telephone number of the employer or any other information required by NYLL § 195(1).

114.   As Defendants failed to provide Plaintiffs with a payroll notice as required by NYLL § 195(1), Plaintiffs are entitled to liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 for each Plaintiff, along with all reasonable attorneys' fees and costs.

115.   Judgement should be entered in favor of Plaintiffs and against Defendants on the Sixth Cause of Action in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 for each Plaintiff, along with all reasonable attorneys' fees and costs.

## AS AND FOR A SEVENTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS
### (*Failure to Provide Wage Statements Under the NYLL*)

116.   Plaintiffs repeat and reallege all prior allegations.

117.   Throughout the relevant time period, Defendants failed to furnish to Plaintiffs, with each wage payment, a statement listing: Plaintiffs' regular and overtime rates of pay; the accurate number of regular and overtime hours worked, gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

118.   As Defendants failed to provide Plaintiffs with wage statements as required by NYLL § 195(3), Plaintiffs are entitled to liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 for each Plaintiff, along with all reasonable attorneys' fees and costs.

119.   Judgment should be entered in favor of Plaintiffs and against Defendants on the Seventh Cause of Action in the amount of $250.00 per day for every day in which the violation

occurred, up to a maximum of $5,000.00 for each Plaintiff, along with all reasonable attorneys' fees and costs.

**<ins>AS AND FOR AN EIGHTH CAUSE OF ACTION ON BEHALF OF PLAINTIFFS</ins>**
*(Failure to Timely Pay Wages Under the NYLL)*

120.    Plaintiffs repeat and reallege all prior allegations.

121.     Pursuant to the provisions of NYLL § 191(1)(a)(i), Plaintiffs were entitled to be paid their earned wages weekly and not later than seven (7) calendar days after the end of the week in which the wages were earned.

122.    During the relevant period, Defendants routinely failed to pay Plaintiffs all of their earned wages in accordance with the agreed-upon terms of employment.

123.    During the relevant period, Defendants failed to timely pay Plaintiffs all of their earned wages on a weekly basis and not later than seven (7) calendar days after the end of the week in which the wages were earned.

124.    Throughout the relevant period, Defendants failed to pay Plaintiffs all minimum, overtime, and spread of hours wages earned by Plaintiffs, in violation of NYLL § 191(1)(a)(i).

125.    As a result of Defendants' violations of the law and failure to pay Plaintiffs in accordance with NYLL § 191(1)(a)(i), Plaintiffs have been damaged and are entitled to recover from Defendants all wages due, along with all reasonable attorneys' fees, interest, and costs.

126.    As Defendants did not have a good faith basis to believe that their failure to pay wages was in compliance with the law, Plaintiffs are entitled to liquidated damages.

127.    Judgment should be entered in favor of Plaintiffs and against Defendants on the Eighth Cause of Action for all wages due, liquidated damages, attorneys' fees, costs, interest, and such other legal and equitable relief as this Court deems just and proper.

<u>**AS AND FOR AN NINTH CAUSE OF ACTION ON BEHALF OF PLAINTIFF**</u>
<u>**MARCELINO GARCIA**</u>
*(Fraudulent Filing of Information Returns)*

128.   Plaintiff Garcia repeats and realleges all prior allegations.

129.   Throughout the relevant period, Defendants paid Garcia his wages partially in cash, without any withholdings for federal, state, and local taxes, and partially in check with withholdings for federal, state, and local taxes.

130.   Defendants provided Garcia with a copy of the IRS Form W-2 that Defendants filed with the IRS each calendar year, which reflected only the wages paid to Garcia via check.

131.   An IRS Form W-2 is an information return as defined by 26 U.S.C. § 6724(d)(1).

132.   Defendants were aware of their duty to accurately report to the IRS all wages paid to Garcia.

133.   Defendants were aware that the IRS Forms W-2 they issued to Garcia and filed with the IRS did not reflect the wages that Defendants paid to Garcia in cash.

134.   Defendants reported fraudulent information to the IRS in violation of 26 U.S.C. § 7434 by filing IRS Forms W-2 with false information regarding the wage payments made to Garcia, thereby decreasing Defendants' tax liability.

135.   As Defendants willfully filed fraudulent information returns in violations of 26 U.S.C. § 7434, Garcia is entitled to damages in an amount equal to the greater of $5,000.00 for each fraudulent information return or the sum of any actual damages sustained by Garcia, along with the costs of this action and reasonable attorneys' fees.

136.   Judgment should be entered in favor of Garcia and against Defendants on the Ninth Cause of Action in an amount equal to the greater of $5,000.00 for each fraudulent information

return or the sum of any actual damages sustained by Garcia for each fraudulent information return, the costs of this action, and reasonable attorneys' fees.

**WHEREFORE** Plaintiffs pray for relief as follows:

a)  on the First Cause of Action on behalf of Plaintiffs and the FLSA Collective Plaintiffs for all overtime wages due to Plaintiffs and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

b)  on the Second Cause of Action for all overtime wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

c)  on the Third Cause of Action on behalf of Plaintiffs and the FLSA Collective Plaintiffs for all minimum wages due to Plaintiffs and the FLSA Collective Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

d)  on the Fourth Cause of Action for all minimum wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

e)  on the Fifth Cause of Action for all spread of hours wages due to Plaintiffs, liquidated damages, and reasonable attorneys' fees in an amount to be determined by this Court;

f)  on the Sixth Cause of Action for liquidated damages in the amount of $50.00 per day in which the violation occurred, up to a maximum of $5,000.00 for each Plaintiff, along with reasonable attorneys' fees in an amount to be determined by this Court;

g)  on the Seventh Cause of Action for liquidated damages in the amount of $250.00 per day for every day in which the violation occurred, up to a maximum of $5,000.00 for each Plaintiff, along with reasonable attorneys' fees in an amount to be determined by this Court;

h)  On the Eighth Cause of Action for all wages due to Plaintiffs, liquidated damages, and all reasonable attorneys' fees in an amount to be determined by this Court;

i)   On the Ninth Cause of Action for damages in the amount equal to the greater of $5,000.00
     for each fraudulent information return or the sum of any actual damages sustained by
     Plaintiff Garcia and all reasonable attorneys' fees in an amount to be determined by this
     Court;

j)   interest;

k)   costs and disbursements; and

l)   such other and further relief as is just and proper.

Dated:  New York, New York
        March 21, 2019

*/s/ Katherine Morales*
Katherine Morales
Katz Melinger PLLC
280 Madison Avenue, Suite 600
New York, New York 10016
(212) 460-0047
kymorales@katzmelinger.com
*Attorneys for Plaintiffs*
