KATZMELINGER
280 MADISON AVENUE, SUITE 600
NEW YORK, NEW YORK 10016
www.katzmelinger.com

| | |
|---|---|
| Katherine Morales | t: 212.460.0047 |
| Katz Melinger PLLC | f: 212.428.6811 |
| | kymorales@katzmelinger.com |

October 31, 2019

**<u>Via ECF</u>**
Honorable Gabriel W. Gorenstein
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:  *Marcelino Garcia, et al., v. Lee & Giant Food System, Inc., et al.,*
          <u>Civil Action No. 1:19-cv-02544-PGG-GWG</u>

Your Honor:

    We are attorneys for the plaintiffs in this matter and we write with the consent of counsel for defendants to seek approval of the parties' agreement to settle all of plaintiffs' claims, which include claims for unpaid overtime and minimum wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York Labor Law ("NYLL");  unpaid spread of hour wages, failure to timely pay wages, and failure to provide wage statements and payroll notices pursuant to the NYLL; and fraudulent filing of information returns pursuant to 26 U.S.C. § 7434. The parties write to respectfully request that the Court approve the settlement agreement, a copy of which is attached hereto as **Exhibit 1**, and allow the parties to discontinue the matter with prejudice pursuant to Fed. R. Civ. P. 41 (a)(2).

      **<u>Background</u>**

        1.  <u>The Claims Asserted by Plaintiffs</u>

    Plaintiffs Marcelino Garcia ("Garcia"), Felipe Leal ("Leal"), and Cesar Valencia ("Valencia") (collectively, "Plaintiffs") commenced this lawsuit alleging nine (9) causes of action against Lee & Giant Food System Inc. d/b/a Giant Food, Inc. and In Tae Jang (collectively, "Defendants"). Plaintiffs' claims arise from their employment with Defendants and include claims for minimum wage and overtime violations pursuant to the FLSA and NYLL; failure to provide spread of hour wages; failure to timely pay wages; and failure to provide payroll notices and wage statements pursuant to NYLL. Garcia also asserted a cause of action pursuant to 26 U.S.C. § 7434 for fraudulent filing of information returns.

Hon. Gabriel W. Gorenstein
October 31, 2019
Page 2

Plaintiffs were employed as warehouse helpers. Garcia alleged he was employed by Defendants from on or around April 25, 2016 until on or around September 7, 2018; Leal alleged he was employed by Defendants from in or around 2011 until in or around July 2019; and Valencia alleged that he was employed by Defendants from in or around 1991 until on or around April 26, 2019.

Garcia further alleged that he worked approximately 55 hours per week from on or around April 25, 2016 until in or around March 2017; and approximately 50 hours per week from in or around April 2017 until on or around September 7, 2018. Although Garcia alleged that his minimum and overtime rates of pay were in compliance with state and federal law, Garcia claimed that Defendants failed to pay him for all hours worked. Specifically, Garcia claimed that Defendants deducted a daily one hour break as an alleged unpaid break, amounting to approximately five work hours deducted as unpaid breaks per week although Garcia was not afforded any breaks throughout his employment. Garcia also claimed that Defendants regularly paid part of his wages by check and part of his wages in cash. However, Garcia alleged that Defendants provided him with a copy of the Internal Revenue Service ("IRS") Form W-2 that Defendants filed with the IRS in 2017 and 2018, which reflected only the wages that were paid to Garcia by check, in violation of 26 U.S.C. § 7434.

Leal alleged that he worked approximately 67.5 hours per week from in or around 2011 until in or around December 2013; 50 hours per week from in or around January 2014 until in or around December 2014; 52.5 hours per week from in or around January 2015 until in or around March 2017; and 45 hours per week from in or around April 2017 until in or around July 2019. Leal claimed that from in or around 2011 until in or around December 2014, Defendants compensated him at a fixed salary of approximately $370.00 per week and did not pay him overtime wages for any hours worked in excess of 40 hours per week. Further, Leal alleged that from in or around January 2015 until in or around September 2015, Defendants compensated Leal at a rate of $8.75 per hour for the first 40 hours worked and at a rate of $13.13 per hour for the first five overtime hours that Leal worked each week and failed to compensate Leal for any overtime hours worked beyond five overtime hours per week. Although Leal alleged that his minimum and overtime rates of pay were in compliance with state and federal law since in or around October 2015, Leal claimed that Defendants failed to pay him for all hours worked. Like Garcia, Leal claimed that for the majority of his employment, he was not afforded any breaks; however, Defendants deducted a daily one hour break as an alleged unpaid break, amounting to approximately five hours deducted as alleged unpaid breaks per week.

Valencia alleged that he worked approximately 60 hours per week from in or around January 2013 until in or around December 2017; 50 hours per week from in or around January 2018 until in or around December 2018; 46 hours per week from in or around January 2019 until on or around April 26, 2019. Valencia further alleged that Defendants compensated him at a fixed rate of $610.00 per week from in or around January 2013 until in or around April 2013; $620.00 per week from in or around May 2013 until in or around October 2013; $640.00 per week from in or around November 2013 until in or around March 2014; and $720.00 per week from in or around April 2014 until in or around December 2014. Valencia claimed that during the aforementioned period Defendants compensated him solely with a fixed weekly salary and did not pay him overtime wages for any hours worked in excess of 40 per week. Although Valencia's minimum

and overtime rates of pay were in compliance with state and federal law since in or around January 2015, like Garcia and Leal, Valencia also alleges that Defendants failed to compensate him for all hours worked. Valencia alleges that although he was not afforded breaks, Defendants deducted a daily one hour break as an alleged unpaid break, amounting to approximately five hours deducted as alleged unpaid breaks per week.

In addition to the aforementioned claims, all three Plaintiffs alleged that Defendants engaged in "time-shaving" practices by deducting time from their respective work hours in addition to the five hours already deducted from their compensable work hours as alleged breaks. Moreover, Plaintiffs alleged that they regularly worked a spread of more than ten hours per day and were not provided with the requisite spread of hour wages. Plaintiffs also alleged that Defendants failed to provide them with the requisite payroll notices and wage statements as required by NYLL §§ 195(1) and (3), respectively.

2. The Defenses Asserted by Defendants

Defendants plead that it has been improving its employee management and recordkeeping system consistently and diligently throughout the years since its operation began in 2011, as evidenced by the different formats of employment records present from 2011 through the present. Defendant assert that violations of the recordkeeping requirement and the laws relating to payment of wages, if any, were by mere oversight and/or despite having made good faith efforts to be in compliance with the applicable laws.

Defendants denied all allegations asserted by Plaintiffs in this action, and maintained that Plaintiffs did in fact take the one-hour meal or other breaks throughout the day, as evidenced by (i) Plaintiff Leal's near-perfect record of one-hour breaks during certain period of his employment. And (ii) the statements signed by Plaintiffs on a weekly basis which confirms Plaintiffs' acknowledgement of taking breaks. Defendants also assert that Plaintiffs were paid strictly on an hourly basis at the rates greater than or equal to the applicable minimum wages in effect at relevant times, and not on a salary basis. Defendants maintained an extent of Plaintiff's work hours and assert that workhours not paid on a given workweek by oversight, if any, has been made-up for in the following weeks. With respect to Plaintiff Leal, Defendants claim that his employment commenced in early 2014, contrary to his allegations. Defendants further maintain that to the extent Plaintiffs were receiving wages at hourly rates greater than the minimum wage rate, Plaintiffs were not entitled to any premium for spread of hours.

Defendants also claim that Defendants have provided all necessary wage notices as required under the NYLL § 195(1) and on a yearly basis since the operation of the business in 2011. Likewise, Defendants assert that paystubs have been provided to Plaintiffs, which were signed and maintained by Plaintiffs. As for Plaintiff's Garcia's claims relating to the tax filing, Defendants claim that the arrangement was pursuant to a specific request by Garcia for his benefit.

3. Procedural History

On March 21, 2019, Garcia and Leal commenced this action against Defendants. On June 13, 2019, Plaintiffs filed an Amended Complaint adding Valencia to the action. Defendants filed

an Answer to the Complaint on May 24, 2019 and an Answer to the Amended Complaint on June 27, 2019.

On May 28, 2019, Judge Paul G. Gardephe referred this matter to mediation. On August 13, 2019, the parties attended mediation led by Pamela Esterman. However, the parties were unable to reach an agreement at the mediation. On August 21, 2019, counsel for the parties submitted a joint letter requesting a settlement conference before Your Honor. On August 21, 2019, Your Honor issued an Order scheduling a settlement conference in this matter for October 8, 2019.

On September 10, 2019, Defendants served Plaintiffs with Rule 68 offers of judgment for Plaintiffs' claims for payroll notices and wage statements violations pursuant to NYLL §§ 195(1) and (3) (the "Rule 68 Offers for Payroll Notice and Wage Statement Violations"). Defendants also served Plaintiffs with offers of judgment for their remaining claims (the "Rule 68 Offers for the Remaining Claims"). On September 23, 2019, Plaintiffs filed their acceptance of the Rule 68 Offers for Payroll Notice and Wage Statement Violations (Dkt. Nos. 30-32), but did not accept the Rule 68 Offers for the Remaining Claims.

On October 8, 2019, the parties attended a settlement conference before Your Honor. At the settlement conference the parties agreed to consider a settlement amount recommended by Your Honor. Your Honor suggested that the parties settle the matter for $100,000.00[1], and on October 10, 2019, the parties consented to a settlement in that amount.

As explained in further detail below, the parties respectfully aver that the proposed settlement agreement is fair, reasonable, and equitable.

### **The Proposed Settlement Should Be Approved**

1. <u>The settlement amount is fair and reasonable</u>

The parties' proposed settlement agreement warrants approval as it is fair, reasonable, and equitable. Indeed, the agreement reflects a reasonable compromise of Plaintiffs' FLSA and NYLL claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Here, there is no doubt that the settlement did not come about because of "overreaching" by Defendants. To the contrary, Plaintiffs are represented by competent counsel and the settlement amount, $100,000.00, results in a recovery to Plaintiffs of $66,389.00, after expenses and proposed attorneys' fees. This sum is fair and reasonable given the early stage at which the settlement was reached, the time and costs associated with continued ligation, and the risk that Plaintiffs would not prevail on all of their claims after a trial.

While the parties continue to express opposing views on the likely outcome of the case, they understand that the complex factual issues in this matter would likely require a trial, and that each party would expend significant time and costs through discovery to prepare for trial. With

---

[1] $40,000.00 to be paid within thirty (30) days of the Court's approval of the parties' settlement agreement; and the remaining $60,000.00 to be paid in five (5) equal monthly installments of $12,000.00 each.

such uncertainty on both sides, the risk to Defendants of a substantial judgment against them, the risk to Plaintiffs of failing to prevail on all of their claims, and the fact that the settlement amount represents a substantial portion of Plaintiffs' claimed unpaid overtime wages, the amount agreed to by the parties represents a fair and reasonable settlement at such an early stage of the litigation.

2. The settlement agreement was the result of arm's length negotiations by the parties

The proposed settlement is also the product of negotiation between parties represented by competent counsel and with the assistance of a mediator and a settlement conference before Your Honor. Plaintiffs and Defendants hold opposing views on the merit and value of Plaintiffs' claims; however, the arm's length bargaining between the represented parties, along with the information uncovered prior to and during mediation and the settlement conference before Your Honor, weighs in favor of finding the settlement reasonable. Moreover, nothing in the record before the Court indicates that the proposed settlement has been achieved through fraudulent or collusive conduct. Through informal discovery, the parties have gathered and exchanged information relevant to the claims and defenses in this matter and can therefore accurately assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable, the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted). Furthermore, since Plaintiffs are no longer employed by Defendants, coercion is unlikely. *See, e.g.*, *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *Cisneros v. Schnipper Rest. LLC,* 2014 U.S. Dist. LEXIS 2111, at *2-3 (S.D.N.Y. Jan. 8, 2014) ("Although the FLSA places strict limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver, these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here") (citation and internal quotation marks omitted).

Additionally, after weighing the factors, the settlement should be allowed to proceed, as: (i) Plaintiffs' alleged injuries will not recur as Plaintiffs are no longer employed by Defendants; (ii) Defendants strongly contest Plaintiffs' estimation of damages; and (iii) continuing to develop the record will only serve to enlarge costs on both sides and will not serve any useful purpose. *Wolinsky v. Scholastic Inc*., 900 F. Supp. 2d at 335-36.

3. Plaintiffs' counsel's fees are reasonable

Lastly, Plaintiffs and their counsel maintain that the proposed amount of attorneys' fees is also fair and reasonable, as Plaintiffs' counsel's own compensation does not adversely affect the extent of the relief obtained by counsel on behalf of Plaintiffs. *See Wolinsky,* 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Thus, the settlement does not favor Plaintiffs' counsel over Plaintiffs.

Under the proposed agreement, Plaintiffs' counsel would recover $416.50[2] as reimbursement for costs and expenses and $33,194.50 in fees. Plaintiffs' contingency fee engagement agreement provides that Plaintiffs' counsel is entitled to recover, out of Plaintiffs' settlement amount, fees totaling one-third of the net amount of any monies recovered on behalf of Plaintiffs, after deducting costs and expenses. This fee should be approved, as "[a]n award of one third of the fund is consistent with what reasonable, paying clients pay in contingency employment cases." *Flores v. Anjost Corp.,* 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014); *see also Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit."). The proposed fee award of one third should also be approved because it was consensual and agreed to by Plaintiffs. *See Mireku v. Red Vision Sys., Inc.,* 2013 U.S. Dist. LEXIS 172102, at *10 (S.D.N.Y. Dec. 6, 2013) (amount of fees "is of little consequence when fees are consensual") (citation and internal quotation marks omitted).

As indicated by Plaintiffs' counsel's time records, attached hereto as **Exhibit 2**, Plaintiffs' counsel has spent a total of 125.4 hours on this matter as follows: Adam Sackowitz, 2.3 hours; Katherine Morales, 117.1 hours; and Nicola Ciliotta, 6.0 hours. Plaintiffs' counsel's hourly rates - $300.00; $275.00; and $275.00, respectively – are reasonable based on their experience and are in line with the rates charged by attorneys in this district. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 437 (S.D.N.Y. 2014) ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.") (internal quotation marks and citation omitted).

Mr. Sackowitz was admitted to the Bars of the states of California in 2014, New York in 2015, and New Jersey in 2016, and has focused his practice on employment law for more than three years. Mr. Sackowitz earned his B.S. from Cornell University in 2009 and his J.D. from the University of California at Los Angeles School of Law in 2014. Ms. Morales earned her B.B.A. from Pace University in 2014 and her J.D. from Georgetown University Law Center in 2017, and was admitted to practice in New York in 2018. Prior to joining the firm, Ms. Morales worked on various employment law matters while maintaining part-time positions with private law firms, universities, and nonprofits. Mr. Ciliotta earned his B.A. from Vanderbilt University in 2015 and his J.D. from Penn State Law School in 2018, and was admitted to practice in New York in 2019. Since joining the firm in 2018, Mr. Ciliotta has focused his practice exclusively on employment law matters.

The $33,194.50 fee sought by Plaintiffs' counsel is below their "lodestar" amount of $34,542.50, and is therefore reasonable. See e.g. *Hernandez v. Merrill Lynch & Co.,* 2013 U.S. Dist. LEXIS 42681, at *27-28 (S.D.N.Y. Mar. 21, 2013) (approving a 3.8 multiplier and collecting cases). As set forth herein, Plaintiffs' counsel negotiated a highly favorable settlement for Plaintiffs, in which Plaintiffs recovered a significant portion of their alleged compensatory damages, which were strongly contested by Defendants, at an early stage of the lawsuit. Moreover, by reaching a settlement with Defendants, Plaintiffs avoid the risks of either receiving an

---

[2] The costs and expenses are as follows: $400.00 for the filing fee and $16.50 for travel expenses.

unfavorable outcome in this matter or, if Plaintiffs prevail in their claims, attempting to enforce a judgment against Defendants.

      Accordingly, the parties respectfully request judicial approval of the parties' proposed settlement agreement, and further request to be allowed to submit a stipulation of discontinuance with prejudice as to Plaintiffs consistent with the requirements of Fed. R. Civ. P. 41(1)(a)(ii).

      Respectfully submitted,

*/s/ Katherine Morales*
Katherine Morales, Esq.
Katz Melinger PLLC
280 Madison Avenue, Suite 600
New York, New York 10016
Telephone: (212) 460-0047
Facsimile: (212) 428-6811
Email: kymorales@katzmelinger.com
*Attorneys for Plaintiffs*